This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, James Shetler ("James"), appeals from the decision of the Wayne County Court of Common Pleas granting the divorce of appellee, Nora Shetler ("Nora"), and James. We affirm.
 I.
Nora filed a complaint seeking a divorce from James. Nora's attorney deposed James on October 11, 1999. Shortly into the deposition, the parties went off the record and reached a settlement agreement. James and his attorney were present and Nora's attorney remained in contact with Nora throughout the settlement negotiations. Back on the record, Nora's attorney read the settlement agreement into the record. Both Nora's attorney and James's attorney questioned James on the record regarding his belief that the terms were fair and equitable and his agreement to be bound by the terms.
The trial court enforced the terms of the October 11, 1999 settlement agreement and granted the divorce on August 1, 2000. This appeal followed.
 II.
Assignment of Error No. 1:
 WHETHER THE TRIAL COURT'S ADOPTION AND APPROVAL OF A PROPOSED OUT OF COURT SETTLEMENT AGREEMENT TIMELY REPUDIATED BY THE HUSBAND BEFORE IT WAS TRANSCRIBED AND SUBMITTED FOR JUDICIAL INQUIRY WAS CONTRARY TO LAW; AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE; AND/OR AN ABUSE OF DISCRETION.
 In his first assignment of error, James argues that the parties' out-of-court, oral settlement agreement should not be enforced. Specifically, James now believes that the settlement provisions regarding custody, divisions of real estate, pensions and property matters are unfair and were a product of undue influence, duress and inadequate legal counsel. We disagree.
Settlement agreements are favored in the law. Walther v. Walther
(1995), 102 Ohio App.3d 378, 383. A separation agreement is a contract between two parties and therefore is enforceable only if the parties intend to contract on its essential terms. Emerine v. Emerine (Oct. 25, 1989), Lorain App. No. 89CA004571, unreported, at 2. Separation agreements may be either written or oral, and may be entered into prior to or at the time of a divorce hearing. Popovic v. Popovic (1975),45 Ohio App.2d 57, 62. Where the agreement is made out of the presence of the court, the court may properly sign a journal entry reflecting the settlement agreement in the absence of any factual dispute concerning the agreement. See Mack v. Polson Rubber Co. (1984), 14 Ohio St.3d 34, syllabus.
An oral settlement agreement "can be enforced by the court in those circumstances where the terms of the agreement can be established by clear and convincing evidence." Pawlowski v. Pawloski (1992),83 Ohio App.3d 794, 799. Clear and convincing evidence is that "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cincinnati BarAssn. v. Massengale (1991), 58 Ohio St.3d 121, 122, quoting Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
It is uncontested that at the October 11, 1999 deposition, James agreed under oath to the terms of the settlement agreement. A transcript of the deposition was filed with the trial court. We find that James entered into a binding settlement agreement on October 11, 1999, the terms of which are established by the clear and convincing evidence of the transcript of the deposition. All matters relating to the complaint for divorce were settled in this agreement.[1]
Having entered into an agreement, the trial court did not err by enforcing the terms of the October 11, 1999 settlement agreement. "[W]hen the parties agree to a settlement offer, [the] agreement cannot be repudiated by either party, and the court has the authority to sign a journal entry reflecting the agreement and to enforce the settlement."Klever v. Stow (1983), 13 Ohio App.3d 1, 4. While in hindsight James may no longer agree with the terms of the October 11, 1999 settlement, he cannot legally repudiate the settlement agreement. Id. James's first assignment of error is overruled.
 III.
Assignment of Error No. 2:
 WHETHER THE TRIAL COURT'S AWARD OF ATTORNEY FEES IN CONNECTION WITH WIFE'S MOTION TO ENFORCE AN OUT OF COURT ORAL SETTLEMENT AGREEMENT WAS CONTRARY TO LAW, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND/OR AN ABUSE OF DISCRETION OR IN THE ALTERNATIVE EXCESSIVE.
 In his second assignment of error, James argues that the trial court erred in awarding Nora $1,116[2] for attorney fees.
We review an award of attorney fees for an abuse of discretion. Oateyv. Oatey (1992), 83 Ohio App.3d 251, 263; Swanson v. Swanson (1976),48 Ohio App.2d 85, 90. An abuse of discretion connotes more than an error of law or judgment, but implies that the judgment can be characterized as unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. It is incumbent upon one seeking attorney fees to establish the reasonableness of those fees.
In the present case, Nora's attorney submitted an attorney fee affidavit and an itemized list of expenses incurred as a result of James's attempt to repudiate the October 11, 1999 settlement agreement. We find the amount awarded for attorney fees was unreasonably high. Of the $1,116 awarded, $612.33 of the award were for expenses not reasonably incurred as a result of James's repudiation. The following expenses would have been incurred in the normal course of the divorce proceedings: $350 for Nora's attorney's attendance at the October 11, 1999 deposition, $70 for a client meeting with Nora after the deposition, $103.03 for the court reporter fee and $89.30 for the transcript of the deposition.
The trial court abused its discretion in awarding attorney's fees in the amount of $1,116. James's second assignment of error is sustained to the extent that the amount the trial court awarded for attorney fees was unreasonably high. Accordingly, we reduced the award of attorney fees to $503.67, an amount that reflects the expenses reasonably incurred as a result of James's attempt to repudiate the settlement agreement. See App.R. 12(A)(1)(a) and (B).
 IV.
Assignment of Error No. 3:
 WHETHER THE TRIAL COURT'S REFUSAL TO CONDUCT A FINAL EVIDENTIARY HEARING REGARDING THE PREPARATION OF THE PARTIES FINAL DIVORCE DECREE IN ORDER TO RESOLVE GOOD FAITH DISPUTED ISSUES BETWEEN THE PARTIES WAS CONTRARY TO LAW, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND/OR AN ABUSE OF DISCRETION.
 In his third assignment of error, James argues that trial court was required to hold an evidentiary hearing because the terms of the separation agreement were in dispute. Having already found that the terms of the settlement agreement were established by clear and convincing evidence, we find that terms of the settlement agreement were not in dispute. James third assignment of error is without merit and is overruled.
 V.
Assignment of Error No. 4:
 WHETHER THE TRIAL COURT'S REFUSAL TO PREPARE AN INDEPENDENT FINAL DIVORCE DECREE PER HUSBAND'S WRITTEN REQUEST WAS CONTRARY TO LAW, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND/OR AN ABUSE OF DISCRETION.
 In his fourth assignment of error, James argues that the trial court erred by requesting drafts of a proposed divorce decree from both parties. Civ.R. 58(A) provides "the court shall promptly cause the judgment to be prepared and, the court having signed it, the clerk shall thereupon enter it upon the journal." James avers that Civ.R. 58(A) mandates the court, not the parties, shall prepare the judgment. James presents his argument on appeal without any reference to case law in support of his interpretation of Civ.R. 58. We find that James has failed to demonstrate that Civ.R. 58 requires a court to write a decision solely in his own hand. James's fourth assignment of error is overruled.
 VI.
Assignment of Error No. 5:
 WHETHER THE TRIAL COURT'S ADOPTION AND APPROVAL OF WIFE'S PROPOSED FINAL DIVORCE DECREE, OVER HUSBAND'S OBJECTIONS, WAS CONTRARY TO LAW; AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE; AND/OR AN ABUSE OF DISCRETION.
 In his fifth assignment of error, James argues that the trial court erred by adopting Nora's draft of a proposed settlement agreement over James's objections. There are three differences between Nora and James's drafts. First, the two drafts state a different amount that James is required to pay Nora from his proceeds of the sale of their house. Nora's draft states that James shall pay Nora $12,815 from his 50% of the proceeds from the sale of the house. James's draft states that amount at $11,200. We note that the transcript of the October 11, 1999 deposition states that James "shall pay to Nora from his 50 percent share of the proceeds the sum of $12,815."
Second, the two drafts differ as to the division of marital property. Nora's draft states that "[a]ny remaining household goods and miscellaneous personal property owned by the parties shall be divided by the parties utilizing the Alternate Selection Method with the party having first choice being determined by the flip of a coin." James's draft states that the parties have previously separated their marital property and provides a date by which the final exchange shall occur. We note that the October 11, 1999 deposition states that the additional personal property that the parties had not yet divided would be divided by making an alternate selection from a master list. "The method to be by flipping a coin and the winner of the coin toss will get first choice from the master list."
Third, the drafts state different methods of payment for the award of attorney fees. Nora's draft states that "a prior order of this court ordering" James to pay Nora $1116 in attorney fees "is hereby modified and said fees shall be paid * * * within thirty days of the journalization date of this order." James's draft states that:
 This Court's prior order time-stamped December 17, 1999, ordering [James] to pay [Nora] attorney fees in the amount of $1,116.00 incurred in enforcing the parties['] October 11, 1999, settlement agreement is hereby modified to read as follows: [James] shall pay said amount to [Nora] from [James's] fifty percent share (50%) of the proceeds of sale of the marital residence as provided for in paragraph 3 of this order payable immediately upon distribution of said share in addition to those sums payable by [James] under paragraph 3 of this order.
 The award of attorney fees arose after the deposition. At the April 4, 2000 hearing, the magistrate found that James had not paid Nora the $1116 in attorney fees.
After a careful review of the record, in light of each party's draft, we cannot say that the trial court committed error by adopting Nora's draft as the parties final divorce decree. James's fifth assignment of error is overruled.
 VII.
James's first, third, fourth and fifth assignments of error are overruled. James's second assignment of error is sustained to the extent that the amount awarded for attorney fees was unreasonably high. The award of attorney fees shall be modified by reducing the same to $503.67. The judgment of the trial court is affirmed as modified.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
______________________________________ WILLIAM R. BAIRD
SLABY, J. CONCURS.
CARR, J., CONCURS IN JUDGMENT ONLY.
[1] On April 4, 2000, the trial court conducted a hearing on the grounds of the divorce. The court held that the grounds for the divorce were incompatibility.
[2] The record reflects that the trial court initially awarded attorney fees in the amount of $1116.33. However, the decree of divorce lists the amount of the attorney fees as $1116.00.